## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALBERT PRUCHNIC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO. 3:13-CV-235** |
| | ) | |
| **v.** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **MATTHEW JAMES WRIGHT,** | ) | |
| **an individual, and WILLIAM S.** | ) | |
| **GEPHART, an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

### I.      Introduction

On October 15, 2013, Plaintiff Albert Pruchnic commenced this civil action against Paint Township ("the Township"), its chief of police, and several of its police officers alleging, among other things, that the Township's police officers used excessive force in connection with his arrest on May 12, 2012. Presently pending before the Court is a motion for summary judgment (ECF No. 39) filed by Defendant Matthew James Wright. For the reasons that follow, the motion will be granted. In addition, because Defendant William S. Gephart died prior to the commencement of this lawsuit and is not a properly named party to this action, the claim against him will be dismissed.

### II.      Jurisdiction and Venue

The Court has jurisdiction over the claims in Counts I and II of the Complaint pursuant to 28 U.S.C. § 1331. The Court has jurisdiction over the claim in Count III of the Complaint pursuant to 28 U.S.C. § 1367. Venue is appropriate pursuant to 28 U.S.C. §1391(b)(2).

III.     **Factual and Procedural Background**

As set forth in the Complaint (ECF No. 1), Plaintiff is a retired dentist who, at times relevant to this lawsuit, resided on property located on David Street in Windber, Pennsylvania, in the County of Somerset.  (*Id.* ¶¶ 6, 12-13.)  As of May 12, 2012, the date on which the events giving rise to this lawsuit occurred, Plaintiff was sixty-five years old.  (*Id.* ¶ 12.)  Plaintiff and his wife own two lots located on the eastern side of David Street, which is a dead-end street in an older, rural residential development.  (*Id.* ¶¶ 14-15.)  At the end of David Street is a large gate that was erected to prevent access to the fields to the south of David Street.  (*Id.* ¶ 19.)

Plaintiff alleges that, on the afternoon of May 12, 2012, a juvenile riding an ATV trespassed on his property after approaching from the fields south of David Street, circumventing the large gate, and traversing a portion of Plaintiff's corner lot where Plaintiff had planted wildflowers.  (*Id.* ¶¶ 21, 23.)  Later that afternoon, an ATV carrying the same juvenile, along with two other juveniles, came down David Street and again crossed Plaintiff's property from the opposite direction, ignoring a 2x4 barrier that Plaintiff had constructed on his driveway to prevent access to the area.  (*Id.* ¶ 24-25.)  Several hours later, while Plaintiff was in his garage workshop, an ATV came to the edge of Plaintiff's property from the fields south of David Street.  (*Id.* ¶¶ 27, 29.)  Plaintiff walked down the driveway to see if the ATV was the same one that had come onto his property earlier that day, but he could not make out the identity of the driver because the ATV's lights blinded his eyes.  (*Id.* ¶¶ 29-30.)  Plaintiff took a few steps forward, at which point the ATV sped backward in reverse.  (*Id.* ¶¶ 31-32.)  Plaintiff claims that, after the ATV was out of sight, he fired a single warning shot with a handgun that he habitually carried in his jacket.  (*Id.* ¶¶ 34-35.)

Approximately twenty minutes later, Plaintiff unloaded and disassembled his gun as he prepared to pull his truck into his garage and enter his house. (*Id.* ¶ 37.) Plaintiff placed the ammunition in one pocket of his jacket and the disassembled gun in the other pocket. (*Id.* ¶ 38.) At this point, a black Chevrolet Silverado pickup truck with darkened windows pulled in front of Plaintiff's garage, blocking the garage entrance. (*Id.* ¶ 39.) As Plaintiff approached the truck, it sped away. (*Id.* ¶¶ 43-44.) Assuming that individuals inside the black truck had some connection to the individuals who trespassed in the ATV, Plaintiff got into his own truck with the intention of following the black truck, obtaining its license number, and making a report to the police. (*Id.* ¶ 45.)

Meanwhile, at 9:12 p.m. on May 12, 2012, Paint Township Police Sergeant William S. Gephart ("Gephart"), Officer Matthew James Wright ("Wright"), and Officer Amanda June Tessari ("Tessari") received a dispatch concerning the incident. (ECF Nos. 40 ¶ 1, 49 ¶ 1.) The dispatch advised that individuals had called 911 to report that a man approached them with a handgun, discharged his weapon, was following them in a truck, and was only one car behind them. (ECF Nos. 40 ¶ 1, 49 ¶ 1.) Although the officers later learned that the shots had been fired into the ground, they had no indication, as they received the dispatch, that the gun had been used for warning purposes only. (ECF Nos. 40 ¶ 2, 49 ¶ 2.) The officers responded to the dispatch in marked patrol units. (ECF Nos. 40 ¶ 4, 49 ¶ 4.)

When the officers located Plaintiff's truck, he was stopped at a red light one vehicle behind the individuals who had called for help. (ECF Nos. 40 ¶ 5, 49 ¶ 5.) All three officers activated their lights and sirens to pull Plaintiff over, at which point Plaintiff began to move his truck to the right. (ECF Nos. 40 ¶¶ 6-7, 49 ¶¶ 6-7.) Plaintiff contends that he pulled his truck

over to permit the officers to pass because he assumed that they were in pursuit of a speeding vehicle.  (ECF No. 50-1 at 3.)  Wright and Tessari both testified, on the other hand, that it was unclear to the officers whether Plaintiff was pulling over or attempting to make a right-hand turn.  (ECF Nos. 40 ¶ 8, 49 ¶ 8.)

The officers then approached Plaintiff's vehicle, blocking it in.  (ECF Nos. 40 ¶ 9, 49 ¶ 9.) Gephart, Wright, and Tessari exited their cruisers in full uniform and with their guns drawn. (ECF Nos. 40 ¶ 10, 49 ¶ 10.)  Plaintiff contends that Gephart and Wright "rushed" his vehicle. (ECF Nos. 40 ¶ 11, 49 ¶ 11.)  Meanwhile, Tessari stayed toward the back of Plaintiff's truck. (ECF Nos. 40 ¶ 13, 49 ¶ 13.)  As he approached Plaintiff's vehicle on foot, Gephart ordered Plaintiff to turn off the engine, put his hands up, and exit his truck.  (ECF Nos. 40 ¶ 14, 49 ¶ 14.) Plaintiff contends that he put his hands in the air and asked what he did wrong, at which point Gephart and Wright physically removed him from his vehicle and took him to the ground. (ECF Nos. 40 ¶ 16, 49 ¶¶ 15-16.)  According to Wright, as the officers pulled Plaintiff out of his truck, the momentum of the three men, combined with lack of space, brought all three of them to the ground.  (ECF Nos. 40 ¶ 18, 49 ¶ 18.)  Plaintiff contends that he was pulled out of the truck within a matter of seconds, before he had any opportunity to exit the vehicle on his own. (ECF No. 49 ¶ 16.)  An independent witness corroborated the fact that only a second or two passed between the time that the truck door opened and the moment that Plaintiff was pulled to the ground.  (ECF No. 49 at 7.)

Plaintiff claims that, during this time, Gephart pointed a gun at his head, yelled at him, and threatened to "blow [his] brains out."  (ECF Nos. 40 ¶¶ 21-22, 49 ¶¶ 21-22; *see also* ECF No. 49 at 5.)  Wright searched Plaintiff and recovered a gun from Plaintiff's jacket pocket.  (ECF Nos.

40 ¶ 24, 49 ¶ 24; *see also* ECF No. 49 at 5.)  The officers then struggled to handcuff Plaintiff, who had one arm underneath his body.  (ECF Nos. 40 ¶ 25, 49 ¶ 25.)  According to Wright, the officers had to "literally yank [Plaintiff's] arm out" from under him because Plaintiff would not help get his arm out, despite commands to do so.  (ECF No 40 ¶¶ 25-26.)  Plaintiff maintains, however, that he was physically unable to get his arm out from underneath himself and informed the officers of this fact.  (ECF No. 49 ¶ 25.)  Plaintiff contends that, during his arrest, one of the officers put a knee in the back of Plaintiff's leg, causing it to swell.  (ECF Nos. 40 ¶ 27, 49 ¶ 27.)  In addition, Plaintiff asserts that his handcuffs were applied too tightly, although he admits that he did not complain about this to the officers at the scene of his arrest.  (ECF Nos. 40 ¶ 29, 49 ¶ 29.)  Wright maintains that, in placing handcuffs on Plaintiff, he "double-locked" the handcuffs by putting a pin in them to prevent them from continuing to tighten.  (ECF Nos. 40 ¶ 30, 49 ¶ 30.)

Nevertheless, at some point after being taken to the station, Plaintiff complained about his handcuffs being too tight, at which point the handcuffs were taken off and put back on again.  (ECF Nos. 40 ¶ 31, 49 ¶ 31.)  Although Plaintiff claims that the handcuffs were once again put on too tightly, he admits that he did not complain about them further to anyone. (ECF Nos. 40 ¶ 32, 49 ¶ 32.)

While at the station, Wright patted Plaintiff down again and discovered the magazine for his gun, which was missing two rounds.  (ECF Nos. 40 ¶ 42, 49 ¶ 42.)  Plaintiff claims that he asked Gephart if he could call his wife but was simply told to "sit down" and "shut up."  (ECF Nos. 40 ¶ 43, 49 ¶ 43.)  According to Plaintiff, while at the police station, he was placed in an interview room and was alone for hours.  (ECF No. 49 ¶ 41.)  Eventually, he told Tessari that his

head, hand, and leg hurt but, when she offered to drive him to the hospital, he refused the offer. (ECF Nos. 40 ¶ 46-47, 49 ¶¶ 46-47.)

After being driven by Tessari to his arraignment, Plaintiff began limping for the first time that evening. (ECF Nos. 40 ¶ 48-49, 49 ¶¶ 48-49.) Following the arraignment, Tessari called Plaintiff's wife and then put Plaintiff on the phone with her. (ECF Nos. 40 ¶ 50, 49 ¶ 50.)

As a result of the foregoing events, Plaintiff sustained a number of injuries, including swelling and bruising to his thigh with attendant pain that lasted for approximately six months, blood in his eye accompanied by blurry vision, bruising to his left hand, numbness and tingling in his right hand that lasted for approximately nine months, partial memory loss, loss of hearing, and chest pain. (ECF No. 49 at 7.) This lawsuit followed.

In his four-count complaint (ECF No. 1), Plaintiff named as Defendants Paint Township, Chief of Police Richard W. Skiles, Sergeant Gephart, and Officers Wright and Tessari. In Count I of the Complaint, Plaintiff asserted a 42 U.S.C. § 1983[1] municipal liability claim against Paint Township based on the predicate excessive force claim. (Id. ¶¶ 106-114.) In Count II of the Complaint, Plaintiff asserted a § 1983 claim against Chief Skiles based on a theory of supervisory liability. (Id. ¶¶ 115-119.) In Count III of the Complaint, Plaintiff asserted § 1983 claims against Gephart, Wright, and Tessari to redress the alleged violation of his Fourth Amendment rights, which allegedly occurred when the foregoing officers subjected Plaintiff to excessive force in the course of his arrest. (Id. ¶¶ 120-124.) In Count IV of the Complaint,

---

[1] Section 1983 provides a cause of action to any individual who has been deprived of his rights under the Constitution or other federal laws by a person acting "under color of law." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007).

Plaintiff asserted a claim against Paint Township for alleged assault and battery under Pennsylvania common law.  (*Id.* ¶¶ 125-131.)

By virtue of a stipulation filed on February 13, 2014 (ECF No. 16), Plaintiff agreed to the dismissal of Counts I, II and IV and further agreed to dismiss the claim against Tessari in Count III.  As a result, the only remaining claims in the case are Plaintiff's § 1983 excessive force claims against Sergeant Gephart and Officer Wright.

Defendant Wright filed the pending motion for summary judgment (ECF No. 39) and related submissions (ECF Nos. 40, 41) on April 9, 2015.  Supplemental audiotape exhibits were submitted to the Court on April 15, 2015.   (ECF No. 42.)   Plaintiff filed his materials in opposition to the pending motion (ECF Nos. 48, 49, 50) on July 9, 2015.  On July 23, 2015, Defendant Wright filed his reply brief (ECF No. 51) in support of summary judgment. Thereafter, this Court granted Defendant Wright leave to file a supplemental brief and supporting exhibits relative to the pending motion (ECF Nos. 53-2, 53-3, 53-4).  Plaintiff filed a supplemental brief in opposition to the pending motion (ECF No. 55) on September 28, 2015.[2] Defendant Wright's motion for summary judgment is now ripe for disposition.

IV.     **Standard of Review**

Summary judgment is appropriate only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).  Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[2] Plaintiff's supplemental brief appears to be nothing more than a re-filing of his original brief in opposition to the pending motion.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).  Material facts are those that will affect the outcome of the trial under governing law.  *Anderson*, 477 U.S. at 248.  The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party."  *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir.2009).  "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the party opposing summary judgment "'may not rest upon the mere allegations or denials of the . . . pleading,'" but "'must set forth specific facts showing that there is a genuine issue for trial.'"  *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986)).  "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant."  *Coolspring Stone Supply, Inc. v. American States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

## V.      Discussion

### A.      Plaintiff's Claim Against Sergeant Gephart

As an initial matter, the Court must resolve the parties' dispute concerning the status of Plaintiff's § 1983 claim against Gephart.  Defendant Wright argues that the claim against Gephart should be dismissed because Gephart is deceased and was never properly served with process.

Plaintiff argues, on the other hand, that any defense as to insufficient service of process has been waived in this case and, therefore, the claim against Gephart should proceed.  Plaintiff contends that defense counsel entered their appearances on behalf of all named Defendants, including Gephart, on November 5, 2013 (ECF Nos. 3, 4) and filed a motion to dismiss on behalf of all Defendants on December 16, 2013 (ECF No. 10).  According to Plaintiff, defense counsel's failure to challenge the sufficiency of service of process in the motion to dismiss constituted a waiver of that defense as it relates to Gephart.  *See* FED. R. CIV. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."); *Gov't of Virgin Islands v. Sun Island Car Rentals, Inc.*, 819 F.2d 430, 433 (3d Cir. 1987) ("[D]efective service of process is waived if it is not challenged in the first defensive pleading.").  Plaintiff further argues that insufficiency of service of process was never raised as an affirmative defense in Defendants' answer (ECF No. 22).  Consequently, Plaintiff insists that the Defendants' opportunity to challenge sufficiency of process "has long passed." (ECF No. 48 at 2.)  *See* FED. R. CIV. P. 12(h)(1) (stating that a party waives certain defenses, including the insufficiency of service of process by "(A) omitting it from a motion in the

circumstances described in Rule 12(g)(2); or (B) failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course").

Plaintiff's argument is misplaced because it assumes that Gephart could have been a properly named Defendant. Notably, Gephart died on April 27, 2013, prior to the commencement of this civil action. *See* http://www.tribdem.com/obituaries/william-s-gephart/article_1327ffb6-f0a7-5636-a65e-d2a1ff8315ac.html.[3] The question thus arises as to whether Plaintiff could have properly asserted a § 1983 claim against Gephart at the time this lawsuit was filed. As the Supreme Court observed in *Robertson v. Wegmann*, 436 U.S. 584 (1978), "one specific area not covered by federal law is that relating to 'the survival of civil rights actions under § 1983 upon the death of either the plaintiff or defendant.'" *Id.* at 589 (quoting *Moor v. County of Alameda*, 411 U.S. 693, 702 n.14 (1973)). "When federal law is thus 'deficient,' [42 U.S.C.] § 1988 instructs us to turn to 'the common law, as modified and changed by the constitution and statutes of the [forum] State,' as long as these are 'not inconsistent with the Constitution and laws of the United States.'" *Id.* at 587 (quoting 42 U.S.C. § 1988). *See also Giles v. Campbell*, 698 F.3d 153, 156 (3d Cir. 2012) (district court sitting in Delaware properly examined Delaware's law of survivorship to determine whether the plaintiff's § 1983 claim against a deceased defendant was extinguished).

Under Pennsylvania law, "the death of an individual renders suit against him or her impossible where an action is not commenced prior to death." *Myers v. Estate of Wilks*, 655 A.2d

---

[3] This Court can take judicial notice of Gephart's date of death, as it is a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and is therefore "not subject to reasonable dispute." *See* FED. R. EVID. 201(b)(2).

176, 178 (Pa. Super. Ct. 1995) (citing *Ehrhardt v. Costello*, 264 A.2d 620, 623 (Pa. 1970)). Nevertheless, Pennsylvania law "does not prevent recovery by a party aggrieved by conduct that occurred during the decedent's lifetime." *Id.* (citing *Ehrhardt*, 264 A.2d at 623). Rather, Pennsylvania law provides that "[a]ll causes of action or proceedings, real or personal, shall survive the death . . . of the defendant," 42 PA. CONS. STAT. § 8302, and such actions or proceedings "may be brought . . . against [the decedent's] personal representative alone or with other parties as though the decedent were alive," 20 PA. CONS. STAT. § 3373. *See also Ehrhardt*, 264 A.2d at 623; *Myers*, 655 A.2d at 178. Pennsylvania's Probate, Estates and Fiduciaries Code defines a "personal representative" as the executor or administrator of an estate. *See Myers*, 655 A.2d at 178 n.4 (citing 20 PA. CONS. STAT. § 102). Thus, in accordance with Pennsylvania law, Plaintiff should have sued the personal representative of Gephart's estate in his or her capacity as the executor or administrator of the estate. *See Myers*, 655 A.2d at 178 (citing 20 PA. CONS. STAT. § 3373; *Ehrhardt*, 264 A.2d at 623; *and Van Mastrigt v. Delta Tau Delta*, 573 A.2d 1128, 1131-32 (Pa. Super. Ct. 1990)).

In the event that no estate was raised or personal representative appointed, the plaintiff's remedy under Pennsylvania law would be to secure the appointment of a personal representative by applying to the Register of Wills for the issuance of letters testamentary or letters of administration to a qualified individual, such as the executor of the decedent's will. *See Myers*, 655 A.2d at 178; *see also Finn v. Dugan*, 394 A.2d 595, 597 (Pa. Super. Ct. 1978) (where an individual has a claim against the estate, it is incumbent upon him to procure the appointment of an administrator against whom he can proceed if no administrator has yet been appointed); 20 PA. CONS. STAT. § 3155 (describing those individuals to whom the register shall

grant letters testamentary or letters of administration). Because Pennsylvania's survival laws do not appear to be "inconsistent with the Constitution and the laws of the United States" in any way, they are applicable in this case. *See Giles*, 698 F.3d at 156 (finding that, because "the Delaware survival scheme is 'not inconsistent with the Constitution and laws of the United States'" it "should apply in this case pursuant to § 1988") (quoting *Robertson*, 436 U.S. at 588 (1978)).

In light of the foregoing principles, Gephart is not a properly named party to this lawsuit, and Plaintiff's assumption that defense counsel's conduct could have somehow waived service of process for Gephart — a deceased individual — has no basis in the law. The docket reflects that Plaintiff was notified of Gephart's death no later than February 28, 2014, when Wright filed his answer to the complaint, yet Plaintiff never sought leave to amend his complaint in order to sue Gephart's personal representative. (*See* ECF No. 22 ¶ 1 ("Defendant William S. Gephart is deceased, has not been served in this matter and is not a proper party to this action").) Because Plaintiff cannot maintain a § 1983 action against a deceased individual, his claim against Gephart will be dismissed. *See, e.g., Mitchell v. Horn*, No. 98-CV-4742, 2005 U.S. Dist. LEXIS 8139, at *3 (E.D. Pa. May 5, 2005) (dismissing claim because neither the deceased officer nor his personal representative was served with the complaint or the amended complaint).

### B. Plaintiff's Claim Against Officer Wright

Plaintiff's sole remaining cause of action is his § 1983 claim against Wright. Plaintiff alleges that, while acting under color of state law, Wright violated the Fourth Amendment's proscription against "unreasonable seizures" by utilizing excessive force in connection with

Plaintiff's arrest and detention.  Wright has moved for summary judgment on the basis of qualified immunity.

### 1.      Excessive Force

To state a claim for excessive use of force under the Fourth Amendment, a plaintiff must show that (1) a seizure occurred using force, and (2) the use of force was objectively unreasonable.  *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004).  In assessing whether an action was reasonable, a court must consider the severity of the crime, whether the suspect posed an immediate threat to public safety, and whether the suspect was resisting or evading arrest.  *Woods v. Grant*, 381 F. App'x 144, 146 (3d Cir. 2010); *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Determining whether the use of force is reasonable is largely a fact specific inquiry.  *See Reiff v. Marks*, No. 08-CV-5963, 2011 U.S. Dist. LEXIS 18205, at *17 (E.D. Pa. Feb. 23, 2011).  Thus, "[t]he reasonableness of the use of force is normally an issue for the jury."  *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).  Nonetheless, "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances."  *Kopec*, 361 F.3d at 777.

In assessing the reasonableness of force used, courts evaluate a number of factors based on the circumstances at issue, including:  (1) the severity of the crime; (2) whether the suspect posed an imminent threat to the safety of the officer or others; (3) whether the suspect actively resisted or attempted to evade arrest; (4) whether the force used was of such an extent as to lead to injury; (5) the possibility that the suspect was violent or dangerous; (6) the duration of the officer's action; (7) whether the action took place in the context of making an arrest; (8) the

possibility that the suspect was armed; and (9) the number of persons with whom the officer had to contend at the time. *Hrezik v. Moyer*, No. 10-CV-4251, 2012 U.S. Dist. LEXIS 6047, at *17-18 (E.D. Pa. Jan. 18, 2012) (citing *Graham*, 490 U.S. at 396; *Sharrar v. Felsing*, 128 F.3d 810, 821 (3d Cir. 1997)).

In this case, the officers' use of force included pointing their service weapons at Plaintiff during the course of his arrest, pulling Plaintiff from his vehicle to the ground, allegedly placing a knee in his leg while he was on the ground, forcefully pulling Plaintiff's arm out from under his body during the handcuffing process, and yelling at him.[4] Plaintiff also complains that Wright applied his handcuffs too tightly.

### a.    Prongs One, Two, Five, and Eight

Evaluating the evidence presented under the totality of the circumstances, and drawing all inferences in favor of Plaintiff, the Court concludes that Wright's use of force was objectively reasonable. The crime at issue, as it was reported to the officers, was undeniably serious. Based on the information conveyed by the dispatcher, Wright and Gephart knew that Plaintiff had been involved in a confrontation with juvenile complainants which had resulted in Plaintiff discharging a firearm. The officers were also aware that Plaintiff had been pursuing the complainants in his truck and was just one vehicle behind the complainants' vehicle at the time he was apprehended.

---

[4] Although Plaintiff maintains that he was subjected to gratuitous yelling, obscenity, and threats that his head could be "blown off," the evidence is clear that this conduct emanated from Gephart, not Wright. (ECF No. 40-1 at 3-4.) Moreover, such conduct does not constitute excessive force. *See, e.g.*, *Sharrar v. Felsing*, 128 F.3d 810, 821 (3d Cir. 1997) (finding no excessive force where officers threatened that they "would blow [the arrestees'] . . . heads off); *Glass v. City of Philadelphia*, 455 F. Supp. 2d 302, 351-53 (E.D. Pa. 2006) (finding no excessive force where the officers placed their guns to the arrestees' heads and used obscene language).

Accordingly, Gephart and Wright were justified in believing that the crime was severe, that Plaintiff might pose an imminent threat to the safety of themselves and others in the vicinity, that Plaintiff might be violent or dangerous, and that Plaintiff was armed.[5] *See Graham*, 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). *See also Ippolito v. Aherne*, No. 14-CV-6077, 2015 U.S. Dist. LEXIS 144710, at *15-16 (E.D. Pa. Oct. 22, 2015) (granting summary judgment where "there was no specific reason to believe [the plaintiff] was armed," but the officer testified that, based on his experience, weapons are located behind the counters in hotels); *Guyton v. Bacher*, No. 3:12-CV-27, 2014 U.S. Dist. LEXIS 111007, at *16-17 (W.D. Pa. Aug. 12, 2014) (granting summary judgment where the officers knew that the arrestee was armed); *Samoles v. Lacey Twp.*, No. 12-CV-3066, 2014 U.S. Dist. LEXIS 79211, at *30 (D.N.J. June 11, 2014) (granting summary judgment as to the plaintiff's excessive force claims where "there was a strong possibility that [the plaintiff] was armed"); *McNeil v. City of Easton*, 694 F. Supp. 2d 375, 392-95 (E.D. Pa. 2010) (granting summary judgment when the plaintiff likely possessed a weapon and posed a threat to officers).

The above considerations support the use of force sufficient to ensure that Plaintiff was swiftly and safely detained. This includes the officers' justified show of force by pointing their weapons at Plaintiff in order to ensure his compliance with arrest procedures. *See, e.g., Stiegel v.*

---

[5] Plaintiff argues that, because the officers did not follow the "felony vehicle stop" procedure, the factfinder could infer that the officers simply did not believe the threat was real. (ECF No. 48 at 7-8.) However, this argument injects an element of subjectivity into the analysis which is not appropriate for purposes of determining the objective reasonableness of the officers' use of force. *See Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006) (explaining that in evaluating the objective reasonableness of the challenged conduct, the court must consider the perspective of a "'reasonable officer on the scene'") (quoting *Graham*, 490 U.S. at 396).

*Peters Twp.*, 600 Fed. Appx. 60, 67 (3d Cir. 2014) (finding that the officer "was justified in temporarily unholstering his weapon and training it on both men while he assessed and gained control over the situation"); *Pikel v. Garrett*, 55 Fed. Appx. 29, 33 (3d Cir. 2002) (agents acted reasonably when they used drawn guns, handcuffed employees, and pushed one employee to the ground and pointed a gun at his ear after he failed to respond to an order to get down); *Mellott v. Heemer*, 161 F.3d 117, 123 (3d Cir. 1998) (concluding that "it was objectively reasonable for the marshals to load and point their weapons in an effort to discourage resistance and ensure their own safety"). *See also Samoles*, 2014 U.S. Dist. LEXIS 79211, at *25 (finding that the officers' pointing their weapons in the direction of the plaintiffs was "objectively reasonable" because they "were concerned with their safety and the safety of others in light of the potential presence of a gun"). The Court therefore finds that prongs one, two, five, and eight weigh in favor of Wright.

### b. Prong Three

The Court notes that Plaintiff pled guilty to the charge of resisting arrest following the incident in question. Such a plea "does not summarily block a plaintiff from bringing an excessive force claim when he has been convicted of resisting arrest." *Garey v. Borough of Quakertown*, No. 12-CV-799, 2013 U.S. Dist. LEXIS 91798, at *17-18 (E.D. Pa. July 1, 2013); *see also Walden v. Voorhees Twp.*, No. 13-CV-7468, 2015 U.S. Dist. LEXIS 158296, at *23 n.2 (D.N.J. Nov. 24, 2015) ("Even if Plaintiff pled guilty to resisting arrest, it remains possible that the officers responded to his physical resistance with excessive force, and executed a lawful arrest in an unlawful manner.").

Plaintiff has conceded that he did not immediately stop his truck after the officers activated their emergency lights; instead, he pulled his truck to the right shoulder of the road and kept proceeding forward about three car lengths toward the intersection on the mistaken assumption that the officers were in pursuit of a different vehicle. (ECF No. 50-1 at 3.) Wright testified that, based on Plaintiff's conduct, he could not be sure whether Plaintiff was attempting to pull over or execute a right-hand turn so that he could continue driving. (ECF No. 40-5 at 5-6, 8.) As the officers approached Plaintiff and commanded him to exit the vehicle, he asked them, "What are you doing here, why are you doing this?" (ECF No. 40-1 at 8.) Plaintiff has acknowledged that he did not immediately turn off his engine and open his door, but he testified that this was because his hands were in the air. (Id. at 7-8.) Plaintiff has also admitted that, once he was on the ground, the officers had difficulty securing his arms for handcuffing purposes. (Id. at 10; ECF No. 50-1 at 5, 7.)

The Court finds that Plaintiff's admissions and plea constitute strong evidence that he resisted the officers' attempts to effectuate his arrest; however, the Court will continue to evaluate the totality of the circumstances to determine whether excessive force was used. *See, e.g.*, *Brown v. Rowan*, No. 14-CV-5874, 2016 U.S. Dist. LEXIS 28446, at *19 (E.D. Pa. Mar. 7, 2016) (finding that "[the plaintiff's] conduct and plea establish that he resisted arrest").

### c.      Prong Four

With regard to whether the force used was of such an extent as to lead to injury, the Court notes that Plaintiff contends that he suffered the following injuries: (i) swelling and bruising to his thigh, with residual pain allegedly lasting for six months; (ii) blood in his eye, accompanied by temporary blurred vision; (iii) bruising to his left hand; (iv) partial loss of

memory; (v) loss of hearing; and (vi) chest pain.  ([ECF No. 49 at 7.](#))  Although Plaintiff contends that he later sought medical treatment for his injuries, it does not appear that he complained of any pain or injuries to police officers until after he was at the police station.  ([ECF Nos. 40 ¶ 46,](#) [49 ¶ 46.](#))  Furthermore, when Officer Tessari offered to take Plaintiff to the hospital, he declined her offer.  ([ECF Nos. 40 ¶ 47,](#) [49 ¶ 47.](#))  Viewing Plaintiff's injuries and the undisputed facts in the light most favorable to Plaintiff, the Court finds that prong four weighs in favor of Wright.

Plaintiff alleges that Wright pulled him out of his vehicle, placed a knee in his leg while he was on the ground, and forcefully pulled his arm out from under his body during the handcuffing process.  Having considered the totality of the circumstances, the Court finds that Wright's interest in protecting himself and effectuating a safe and efficient arrest was paramount to his intrusion on Plaintiff's rights.  Moreover, well-settled law establishes that Wright's conduct is insufficient to demonstrate excessive force.  *See, e.g., Gunter v. Twp. of Lumberton*, 535 Fed. Appx. 144, 147-48 (3d Cir. 2013) (finding that "the police officers' use of a sweeping kick to force [the decedent] to the ground" did not constitute excessive force); *Patrick v. Moorman*, 536 Fed. Appx. 255, 260 (3d Cir. 2013) (affirming summary judgment where the arrestee was tased and fell to the ground, suffering several broken bones, deep cuts to his face, and memory loss for two months); *Brown v. Cwynar*, 484 Fed. Appx. 676, 680 (3d Cir. 2012) (holding that amount of force applied to the seventy-three-year-old arrestee when officer released a taser gun into arrestee's back during arrest was proportional and therefore reasonable where at the time the officer fired the taser, he had been informed by dispatch calls that a police officer was in need of assistance and had been fighting with someone, had personally observed the arrestee scuffling with police officers, and had observed arrestee lying

on the ground and refusing to release his hands from beneath his body); *Brown v. Rinehart*, 325 Fed. Appx. 47, 51 (3d Cir. 2009) (holding that the plaintiff's rights were not violated by the use of force at issue where, during arrest, the officer used his right knee to deliver a "stun blow" to his right thigh); *Bornstad v. Honey Brook Twp.*, 211 Fed. Appx. 118, 120-21 (3d Cir. 2007) (finding no excessive force where the officers pepper sprayed the arrestee, pressed a knee into his chest, and tied his feet together before he was pronounced dead and stating that "the mere fact that an injury occurred while an individual was in police custody is not sufficient to avoid summary judgment — a plaintiff must identify the *specific* unreasonable conduct that caused his or her injuries") (emphasis in original). *Cf. Green v. N.J. State Police*, 246 Fed. Appx. 158, 163 (3d Cir. 2007) (although "there is no case law holding that police officers cannot use force against a subject in an attempt to subdue him or remove him from a vehicle," grabbing and choking an arrestee's throat was found to be unreasonable) (internal quotations omitted). *See also Cochran v. Kupchella*, No. 14-CV-199, 2015 U.S. Dist. LEXIS 167037, at *21 (W.D. Pa. Dec. 14, 2015) ("[A]ssuming Plaintiff did suffer some bruising and swelling, these injuries are [de] minimis in nature.").

Plaintiff also asserts that Wright applied his handcuffs too tightly. Wright has provided uncontradicted evidence that, in applying the handcuffs, he "double-locked" them by inserting a pin which prevents the handcuffs from continuing to tighten. (ECF No. 40-5 at 23-24.) Moreover, while Plaintiff claims that Wright made the handcuffs "as tight as possible," (ECF No. 40-1 at 10, 12), it is undisputed that Plaintiff made no complaints concerning the handcuffs until he was back at the police station, at which point Wright took the handcuffs off and reapplied them after repositioning Plaintiff's hands in front of his body. (*See id.* at 12-13.)

Although Plaintiff contends that the handcuffs were again applied too tightly, he admits that he made no further complaints along these lines. (*Id.* at 13.)

Given that Wright responded to Plaintiff's complaints of pain by readjusting the handcuffs, Plaintiff never complained further to Wright about the tightness of the handcuffs, and Plaintiff did not manifest any other objective signs of pain or injury, the Court cannot conclude that the force used was of such an extent as to lead to injury. *See, e.g., Whiting v. Bonazza*, 545 F. App'x 126, 130 (3d Cir. 2013) (no Fourth Amendment violation occurred where the plaintiff alleged that her handcuffs had been placed on her wrists too tightly, that she had suffered knee injuries from being placed in the backseat of the police cruiser, and that she had suffered a panic attack; court noted that "the record simply [did] not reflect that [the plaintiff] was injured or in discomfort after being placed in the car"); *Gilles v. Davis*, 427 F.3d 197, 208 (3d Cir. 2005) (no excessive force existed as a result of the plaintiff remaining in handcuffs for three or four hours after being arrested for disorderly conduct; although the plaintiff complained of pain to one officer, no other "obvious visible indicators of [] pain" were present, as the videotape of the arrest did not depict the plaintiff demonstrating any expression or sign of discomfort upon handcuffing, and he never sought or received medical treatment after his arrest); *Torres v. United States*, 200 F.3d 179, 186 (3d Cir. 1999) (no constitutional violation occurred where agents left the plaintiff handcuffed for up to three hours during their execution of a search warrant; the plaintiff remained covered with a towel and seated on a couch for most of the time, agents permitted other family members to sit with him, and agents loosened his handcuffs after the plaintiff twice indicated they were too tight); *Clifton v. Borough of Eddystone*, 824 F. Supp. 2d 617, 631 (E.D. Pa. 2011) (under *Gilles*, no excessive force was used by arresting

officer, despite the fact that the plaintiff remained handcuffed for up to four hours, where she admittedly never told the arresting officer that the handcuffs were too tight, and she did not claim to have exhibited any other "obvious visible indicators of pain") (internal quotations omitted). *Cf. Kopec*, 361 F.3d at 777 (reversing summary judgment on excessive force claim where the plaintiff's extreme pain from handcuffing would have been obvious to arresting officers, as he made repeated complaints about pain, fell to the ground and began to faint, and suffered permanent nerve damage in one wrist as a result of the handcuffing, for which he sought medical treatment).

### d.      Prong Six

The only evidence regarding the duration of time is Wright's testimony that it took "[one] [m]inute, little over a minute maybe" from the time he got out of his vehicle until the time that he had Plaintiff on the ground." (ECF No. 40-5 at 22.) Additionally, Plaintiff contends that he was pulled out of the truck within a matter of seconds. (ECF No. 49 ¶ 16.) An independent witness corroborated the fact that only a second or two passed between the time that the truck door opened and the moment that Plaintiff was pulled to the ground. (ECF No. 49 at 7.) This evidence supports a conclusion that the duration of time was reasonable. *See, e.g.*, *Stiegel*, 600 Fed. Appx. at 66 (finding no excessive force, in part, because the encounter lasted only between five to ten minutes). However, because the parties have not indicated the duration of the entire encounter, the Court concludes that prong six is neutral.

### e.      Prong Seven

The use of force occurred in the context of an arrest, and the Supreme Court has long recognized that the "right to make an arrest or investigatory stop necessarily carries with it the

right to use some degree of physical coercion or threat to effect it." *Graham*, 490 U.S. at 396-97 (stating that "police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation"). *See also Ayala v. McCormick*, No. 09-CV-3484, 2014 U.S. Dist. LEXIS 42890, at *25 (D.N.J. Mar. 28, 2014) (granting summary judgment because although the crimes at issue were not particularly severe and did not involve a number of individuals, these considerations were outweighed by the facts that "[t]he defendants' use of force took place in the context of effecting an arrest, and the defendants perceived the plaintiff to be actively resisting arrest"); *Leibner v. Borough of Red Bank Police Dep't*, No. 12-CV-4104, 2013 U.S. Dist. LEXIS 33713, at *41 (D.N.J. Mar. 12, 2013) ("[I]t is also uncontroverted that the challenged use of force occurred entirely in the context of Plaintiff's lawful arrest"). The Court therefore finds that prong seven weighs in favor of Wright.

### f.      Prong Nine

Finally, although Plaintiff was the only person with whom Wright and Gephart had to contend, the Court finds that Wright and Gephart did not constitute an overwhelming show of force. As discussed above, Wright and Gephart believed that Plaintiff was armed and was pursuing the complainants in his truck. The Court therefore concludes that prong nine weighs in favor of Wright. *See, e.g., Farmer v. Riordan*, No. 10-CV-5824, 2015 U.S. Dist. LEXIS 38932, at *31-32 (D.N.J. Mar. 26, 2015) (granting summary judgment where several officers subdued the plaintiff, who was resisting arrest); *Hunte v. Howell*, No. 1:13-CV-2676, 2014 U.S. Dist. LEXIS 97140, at *14-15 (M.D. Pa. July 17, 2014) (granting summary judgment where two officers approached and one officer tased the plaintiff after he refused to exit his vehicle). *See also*

*Neuburger v. Thompson*, 305 F. Supp. 2d 521, 524, 529 (W.D. Pa. 2004) (granting motion to dismiss where "[t]he four Troopers on scene did not constitute an overwhelming show of force, although [the plaintiff] was the only individual with whom they ostensibly had to contend" after she fired one shot from a handgun into a lake).

Having considered the totality of the circumstances, only prongs six and, to a lesser extent, three are neutral. Accordingly, the Court cannot conclude that Wright's use of force was objectively unreasonable. *See Mazzella v. Marzen*, No. 3:13-CV-1516, 2015 U.S. Dist. LEXIS 7301, at *16 (M.D. Pa. Jan. 14, 2015) (granting summary judgment where the officer did not use more force than was necessary under the circumstances); *Leibner*, 2013 U.S. Dist. LEXIS 33713, at *38 (granting summary judgment because "the vast majority of [the nine] factors support a finding that the Officers' use of force was reasonable under the circumstances").[6]

### 2.      Qualified Immunity

Even if, assuming arguendo, Wright's conduct constituted unreasonable force, he would still be entitled to qualified immunity for his actions. Qualified immunity is an affirmative defense available to government officials sued in their personal capacities, and for which the government officials have the burden of proof. *See Brown*, 484 F. App'x at 680. It is intended to "shield government officials performing discretionary functions, including police officers, 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kopec*, 361 F.3d at 776 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

---

[6] As discussed above, Gephart is not a properly named party to this lawsuit. However, the Court notes that even if Gephart had been a properly named party, the Court's above analysis regarding Wright would also apply to Gephart.

"An officer is entitled to qualified immunity if he meets at least one of a two prong inquiry." *Patrick*, 536 F. App'x at 259. The Court must first evaluate whether the defendant violated a constitutional right and then must determine whether the constitutional right was clearly established. *See id.*; *see also Reedy v. Evanson*, 615 F.3d 197, 223-24 (3d Cir. 2010); *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (the second prong examines whether a reasonable person would know that his or her conduct was unlawful under the circumstances). District courts are, however, permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis" to address first "in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Determining whether a defendant is entitled to qualified immunity is an objective question that is decided as a matter of law. *Reiff*, 2011 U.S. Dist. LEXIS 18205, at *16 (citing *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004). The Court must examine the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* (quoting *Pearson*, 555 U.S. at 244). Granting summary judgment for qualified immunity is inappropriate, however, if there are disputed facts material to the objective reasonableness of the officer's conduct. *Id.* (stating that the defendant police officer was not entitled to qualified immunity because of the disputed factual issues) (citing *Hall v. Raech*, 677 F. Supp. 2d 784, 799 (E.D. Pa. 2010)).

Here, as discussed above, Wright did not violate Plaintiff's constitutional rights. Moreover, the record does not evince anything that would have alerted Wright that his actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). The Court therefore concludes

that Wright is entitled to qualified immunity. *See, e.g.*, *Abdullah v. Hess*, No. 3:15-CV-924, 2016 U.S. Dist. LEXIS 32891, at *29-30 (M.D. Pa. Mar. 15, 2016) (finding that the defendants were entitled to qualified immunity after they placed the plaintiff in restraints for twenty-four hours); *Farmer*, 2015 U.S. Dist. LEXIS 38932, at *34 (concluding that the officers were entitled to qualified immunity because "[the plaintiff] has not shown a violation of his constitutional rights, nor that it would have been reasonably clear that the officers were engaging in unlawful conduct when they restrained [him]); *Trainer v. Anderson*, No. 12-CV-2409, 2015 U.S. Dist. LEXIS 30798, at *16 (D.N.J. Mar. 13, 2015) (granting qualified immunity to the officers because "no reasonable factfinder could conclude that [their] actions . . . were objectively unreasonable given the facts and circumstances confronting them"); *Wisneski v. Denning*, No. 12-CV-864, 2014 U.S. Dist. LEXIS 59776, at *69-70 n.4 (W.D. Pa. Apr. 30, 2014) (noting that the officers were protected by qualified immunity because "no reasonable official would understand that the purported single use of a stun gun at [the] arrest, the forcible removal from the car and handcuffing of [the plaintiff], and the failure to obtain immediate medical care for [the plaintiff's] minor scrapes and bruises violated a clearly established constitutional right"); *Kist v. Fatula*, No. 3:06-CV-67, 2009 U.S. Dist. LEXIS 15490, at *25-26 (W.D. Pa. Feb. 27, 2009) (finding that the officer's actions of aiming his firearm at the plaintiff, reaching into the plaintiff's vehicle, and spraying mace at the plaintiff, "while perhaps unnecessary in hindsight," were not perpetrated by the officer "to purposefully violate the [plaintiff's] rights"). *See also Estep v. Mackey*, No. 15-1943, 2016 U.S. App. LEXIS 2476 (3d Cir. Feb. 12, 2016) (vacating this Court's order denying qualified immunity).

**VI.    Conclusion**

For the reasons stated above, the motion for summary judgment filed by Defendant Matthew James Wright will be granted. Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendant William S. Gephart, who was deceased at the time this action was filed, will be dismissed.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALBERT PRUCHNIC,** | ) |
| | ) |
| Plaintiff, | )    **CIVIL ACTION NO. 3:13-CV-235** |
| | ) |
| v. | )    **JUDGE KIM R. GIBSON** |
| | ) |
| **MATTHEW JAMES WRIGHT,** | ) |
| **an individual, and WILLIAM S.** | ) |
| **GEPHART, an individual,** | ) |
| | ) |
| Defendants. | ) |

### ORDER

**AND NOW,** this 30th day of March, 2016, upon consideration of the motion for summary judgment filed by Defendant Matthew James Wright (ECF No. 39), and in accordance with the accompanying memorandum opinion, **IT IS HEREBY ORDERED** that Defendant Matthew James Wright's motion for summary judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant William S. Gephart are **DISMISSED.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Defendants Matthew James Wright and William S. Gephart, and against Plaintiff Albert Pruchnic, and shall mark this case closed.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE